Good morning, Your Honors. May it please the Court, Harini Raghupathy from the Federal Defenders, on behalf of the appellant, Mr. Ernesto Haro-Munoz. At Mr. Haro's 2011 expedited removal, it's undisputed that the examining immigration officer violated the record of proceeding regulation by failing to obtain Mr. Haro's signature on the back of the Form I-860. Because this regulatory violation prevented Mr. Haro from receiving meaningful notice in a language he could understand and an opportunity to respond, and because it's plausible the officer would have allowed Mr. Haro to withdraw his application for admission, this Court should vacate the conviction with directions to dismiss the indictment. Counsel Judge Gould, if I could ask a question. How does not signing the form on the back affect his ability to understand if, in fact, he was given the form? Well, so the reason it affects his ability to understand is the form is entirely in English. And we know from the PSR, the Texas PSR, paragraph 46, Mr. Haro is a monolingual Spanish speaker. He has no command of English. He signed it on the back. If he had signed the form on the back, he still isn't an English speaker. Right. The signature is... So I'm not seeing the connection there. The signature... And I thought he was also given an admonition in Spanish as well. I'll address that in two parts. First, the signature requirement under the regulations is an attestation from the perspective of the alien that he was explained the charges in a language he can understand and that he was given an opportunity to respond. So because his signature is not on there, we don't have that attestation from Mr. Haro. And the only evidence we have is that a copy of the form was served on him in English. And then we also have Mr. Haro's declaration where he declares that he doesn't remember the agent explaining to him that he was being deported. All he remembers was being told to sign something and that he'd be sent back to Mexico. So the signature is much more than just simply a signature. It's basically Mr. Haro's declaration that he was explained the proceedings in Spanish, in the language he could understand, and was given an opportunity to respond. And without that signature, there's no evidence in the record to show that Mr. Haro knew what was going on. And then the second part of your question, Your Honor, was Mr. Haro was given a separate advisal contained in the Form I-867, but that advisal is materially different in scope. So that advisal doesn't contain the factual allegations the alien is alleged to have committed. It doesn't contain the legal grounds or statutory grounds of inadmissibility. And most importantly, it doesn't contain the fact that there's a formal order of removal being entered against the alien. The only place where the formal order appears is on the Form I-860, which wasn't read to Mr. Haro in Spanish. So he was basically just told, you're in expedited removal proceedings. We may be giving you an order of removal. We may not. He was never definitively told in a language that he could understand that he was being ordered removed. And that carries a serious consequence, which is an attendant, a 5-year bar on reentry. Roberts. Let me ask you this. You're making an argument, as you would before the Court below, but don't we have to defer to the Court? Isn't this issue the due process claim about notice?  Yes. Okay. And if your client actually received notice, actual notice, regardless of whether he signed the back of the form, that that would probably not be a violation of due process, right, if he received notice of all these conditions? If he received notice, it wouldn't be a due process violation. That is correct. Okay. And didn't the judge, district judge, make that determination a factual determination that he did receive notice? Yes. Considering your client's suggestion that he didn't recall signing it, he took that into consideration. He took into consideration testimony from, I guess, the officer, the documents. He also took into consideration the second document, which he actually did receive, no question about that, and came to the factual determination that he, in fact, your client, in fact, received notice. So where is the due process, unless you ask us to revisit the evidence and overrule the district court? Well, I have two responses, Your Honor. One is that I would submit that the determination of whether Mr. Hara received notice based on being given the form, whether that constitutes notice under the regulations and under due process is, as a matter of law, is ultimately a legal question that this Court would determine de novo, or at the least is a mixed question of law and fact, which this Court would consider de novo. But even assuming this Court considers it a factual determination, I would say that that factual determination is clearly erroneous in this case, because the only evidence we have in the record is that Mr. Hara was given a form in English. He's a Spanish speaker, and that's the only evidence that's been adduced below. And on the very similar record in United States v. Reyes Bonilla, this Court held that it was clearly erroneous for the district court to find that the alien was explained the charges against him, because it was a very similar situation. There was a form that said the charges were explained and or served on the alien, and the alien was also a Spanish speaker. And the Ninth Circuit held, well, language that says that the form was explained and or served is insufficient to constitute notice, and the court reversed the district court's finding of notice. And I think that the same outcome is warranted here.  Mr. Hara, did you know that Mr. Hara had been in this country illegally four times, that he might have had some indication that he wasn't, and when he swam across the river and when he climbed over the fence, that he knew that he was, in fact, not to come into this country without getting authorization? Well, I, so at the time of the expedited removal, Mr. Hara had only come into the country once previously, which was in, he had one prior entry. But I think that goes to the question of plausibility, whether withdrawal would have been a plausible form of relief. And the factors this Court looks to in assessing whether withdrawal is plausible are enumerated in the Inspector's Field Manual, and there are six factors that the Court determines whether on balance withdrawal would be in the interest of justice. And I think the factor that Your Honor is talking about suggests that Mr. Hara did have an intent to violate the law, and that's why I'm saying that. I haven't gotten to that point yet, the six factors, but that certainly is a factor against him, the fact that he came in knowingly and deliberately illegally, as opposed to being misled by, you know, some faulty documentation that somebody on the street corner maybe sold to him. But he didn't come back through the international airport or walk across the bridge. He went over the fence on one occasion, swam on at least two other occasions, hiding in the bushes. Doesn't that ñ isn't that some indication that he knew that he wasn't supposed to come back to this country, that he was excluded from this country? Well, no, Your Honor, because his only prior exposure to the immigration system ñ so at the time of the expedited removal, his only prior exposure to the immigration system was in 2009, and he was ñ No, I understand that. But now let's look at what he's done since that time. But that doesn't answer the analysis, Your Honor. Doesn't his actions today indicate what he knew then? No, Your Honor, because when we're conducting a collateral attack on an expedited removal order, we are confined ñ we basically transport ourselves back to the time of 2011. And so anything that's transpired from the time of the order until now doesn't factor into the analysis, because the question is whether at the time that the expedited removal order was entered, was it a regulatory or due process violation? No, no. The question is, did he have notice? Right. At the time ñ I'm suggesting, and I may ñ no, I'm just throwing this out, that the notice might be evidenced by the fact that he continued to swim across the river, drove the fence and hide in the bushes. Well, I don't think that gives him notice of the fact that there was a formal order of removal being entered against him. That may suggest that Mr. Haro knew he shouldn't have come in. But that's a different matter than whether there was a formal order of removal entered against him. I see that I have a short time remaining, if I may. But could you address the prejudice briefly? Sorry, Your Honor. So as I was suggesting, there are six factors that are specified in the inspector's field manual to determine whether it would be plausible to grant withdrawal. And again, it's an equitable standard. It's whether it would be in the interest of justice. In here, I think four factors out of the six strongly align in Mr. Haro's favor. So the first factor is that he ñ so the first factor is the seriousness of the immigration violation. And the primary evil against which expedited removal is directed is fraud. So individuals who use counterfeit or fraudulent documents to enter the United States or who make affirmative misrepresentations at the port of entry. And Mr. Haro did neither. As soon as he was apprehended, he readily complied with the interrogation he readily admitted his lack of authorization to be in the United States. So I think the first factor is to his benefit. The second factor, there are no previous findings of inadmissibility against him because his only prior interaction was with the immigration system was in 2009, and he was granted a voluntary return. So there were no findings entered against him. The fourth factor, ability to overcome the grounds of inadmissibility, our position is that also is to Mr. Haro's benefit because he could obtain the proper documentation to enter the United States through his United States citizen wife. And ñ But he'd have to first get his drug conviction expunged, wouldn't he? He would have to get his drug conviction vacated either through expungement under a California rehabilitation statute or through some other post-conviction constitutional attack. But that's only ñ even if this Court disagrees that that is a factor that weighs in Mr. Haro's benefit, that's only one of the factors, one of the six total factors. And ultimately what we have here is withdrawal is not a very strong form of relief. It doesn't entitle Mr. Haro to remain in the United States. Basically what it's saying is, okay, you can leave the country, you're not allowed here, but we're going to let you leave without issuing a formal order of removal. So the plausibility of relief has to be assessed against the strength of the relief. All right. Thank you, counsel. We'll give you a minute for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. Jerry Benke for the United States. I want to first address the issue of whether there was even a due process violation in the first place before we get to the issue of whether the defendant was prejudiced by any such violation. First, I want to remind the Court that in the context of these proceedings, the defendant bears the burden of proof on both prongs. The defendant has to establish that a due process violation occurred, and the defendant was plausible because of the violation. First, getting to the issue of the due process violation, the defendant has maintained throughout that the violation that occurred in this case was the failure of the officer to get his signature on the back of the Form I-860. And as the defense correctly points out, the Form I-860, when you look at the back, does not contain the defendant's signature. But as this Court recognized recently in Sanchez-Aguilar, when you're dealing with expedited removal proceedings involving an individual who's apprehended at the border, he's only entitled to those rights that are specifically enumerated. In this particular case, the regulation dealing with expedited removal requires the officer to serve the defendant with notice of the allegations, to give the defendant an opportunity to respond in the sworn statement, and have the defendant sign the back of the Form I-860. In this particular case, the district court correctly found that even if the defendant didn't actually sign the back of the Form I-860, he did actually receive notice. We know that because on the front of the Form I-860, the immigration officer signed, certifying that he served Mr. Jaramuñoz with a copy of the form. So, counsel, what is the purpose of having the signature requirement? The, essentially what the regulation does is it provides two mechanisms to ensure that the alien receives a copy of the Form I-860. On the one hand, the immigration officer is supposed to sign certifying that he served him, and then also the regulation says that the alien is supposed to sign the back of the form acknowledging receipt. Because it would be easy for an officer to say that he served notice without the notice having actually been served, but the signature of the alien gives confirmation to that. So why is it not important that the alien actually verify that the notice was served so that it's a check against unilateral fabrication? The government isn't asserting that it's not an important check. Certainly, it's in the regulation. It is something that the immigration officer is supposed to comply with, and as Your Honor points out, there is a purpose to it. I'm not asserting that it is not an important step. All of the steps in the process are important. The issue is, was the failure to do that, did that rise to the level of due process? Well, would it ever rise to the level of due process under your view? If the signature of the officer is adequate for notice, then would it ever rise to the level of a due process violation if the alien did not sign the form? Well, in this particular case, it did not rise to the level of due process. Would it ever? If your argument is that the signature by the officer is adequate to show notice, then would the failure to obtain the alien signature ever rise to a due process violation, or is this per se not a violation of due process? No, I don't think it's per se, a per se issue. If, for instance, facts were developed to show that the officer signed the form by mistake, if, for instance, facts were developed that the officer was processing multiple aliens at the same time, and he signed this form thinking he had served it, when in fact he hadn't served it, or some other fact. What about the fact that the alien said that he doesn't remember the officer giving him the warnings that were on the form? Well, first, as the district court pointed out, what Mr. Haro indicated in his declaration was I don't recall them telling me I was being deported. So first, he simply is expressing a lack of recollection. He's not asserting that it didn't happen. But then second, getting beyond that, the issue is what the defense is saying is I don't recall him being deported. And they argue that that's important because he didn't understand that he wasn't supposed to come into the country and that this was a legal removal. First, I believe Judge Huck correctly points out that in analyzing whether that is the case, it was appropriate for the district court to consider what Mr. Haro Munoz did after he was removed. When he tried to come back into the United States after his removal, he didn't come to the port of entry and present himself. He didn't apply formally for permission. Instead, he again swam across the river and hid. So he clearly knew that he wasn't supposed to be coming into the United States. And in addition to that, the record, the excerpts of record at page 120 show that the notice to remove alien that accompanies the warrant of removal. And the notice to remove alien tells him that he is being removed and that he's barred from returning to the country for a period of time. I believe in his case it was five years. So in this particular case, in light of all of those facts, the failure to get Mr. Haro Munoz to put his signature on the back of the form I-860 doesn't rise to the level of a due process violation. Now, turning to the prejudice prong, Mr. Haro Munoz has also failed to establish, first and foremost, a link between the claim violation and the relief that he's arguing he was entitled to. Nowhere in his declaration does he say, if I had only known I was being removed from the country, I would have asked for a voluntary withdrawal. Well, I'm using the incorrect term. It's withdrawal of application. Yes, Your Honor, that's correct. But he never makes the assertion that he would have asked to withdraw his application for admission if he had known that he was being removed. And again, if you get back to the form I-867, which he doesn't dispute was read to him in the Spanish language, it says on that form that he may be removable, and he's advised that the immigration officer was conducting an investigation to determine whether he was removable. So this idea that he was clueless, I think, is not borne out by the record. And also this Court has pointed out that when you're dealing with an alien in an expedited removal, the immigration officer has no obligation. The regulation places no obligation on the immigration officer to tell the alien about the opportunity to withdraw an application for admission. And finally, again, defendant bears the burden on these issues, and he has not established that the immigration officer didn't in fact consider him for withdrawal and declined to grant that relief. But still, putting all that to the side and moving to the actual issue of whether relief was plausible. When you analyze the factors in the field manual that immigration officers are supposed to consider in determining whether to allow someone to withdraw their application for admission, in this case, the defendant cannot show that the relief was plausible. Because? I'm sorry, Your Honor. Specific. Give us some specifics. Well, specifically, one of the main arguments that he makes to assert that relief was plausible is this idea that he could have overcome the grounds for inadmissibility. And he continues to argue that the factor is that he's able to overcome his grounds for the grounds for inadmissibility. That's not the wording in the regulation. The field manual says easily overcome the grounds for inadmissibility. And in this case, he was not able to easily overcome the grounds for inadmissibility because he has the prior drug conviction. Because he has the prior drug conviction, he is not able to receive a visa through petition by any United States spouse. The drug conviction precludes that. He argues that, well, he could go in and potentially get it expunged. As the government pointed out in response to that argument, which was raised in his reply brief, we submitted a 28J letter with cases from California indicating that for relief under Section 1203.4, the defendant has to show that he successfully completed all of the conditions of probation. Well, here we know that he returned to the United States unlawfully while he was on probation. So he's not able to show that. To get an expungement under Prop. 36, he has to show that he successfully completed the imposed conditions of drug treatment or drug testing that would have been a part of his probation. And again, he was deported from the United States during the period of his probation, and to this day he has not established that he completed any terms of probation. So this idea that he can easily obtain an expungement and therefore easily obtain an expungement under a petition because of a U.S. citizen's spouse is simply incorrect. All right. Thank you, counsel. Excuse me, rebuttal. Just a few points, Your Honor. First, even if this Court finds that the notice here didn't arise to a due process violation, we could still invalidate the removal order because it's a regulatory violation, and that's a well-established proposition in Calderon-Medina, in Rangel-Gonzalez, and more recently in United States v. Ramos. Second, I just want to emphasize that the I-860 is the only piece form in the entire record where the formal order of removal, a fact that the formal order of removal is entered, is being notified to the defendant. The Form I-867 just says you may be deported. Well, may be deported is very different from you are deported, especially given that Mr. Haro at that time, his only prior interaction with the immigration system was a voluntary return. So he was never formally deported before. So it's very plausible that he thought the same thing was happening to him again, that he was simply being kicked back without a formal order being entered against him. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case, West v. Biter, has been submitted on the briefs.
judges: Huck, Gould, Rawlinson